UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSEPH W. LORD,

    Plaintiff,

v.                                      Case No:   6:14-cv-1138-Orl-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION AND ORDER**

       This cause is before the Court on Plaintiff Joseph W. Lord's Complaint (Doc. 1) filed on July 15, 2014.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits, and Supplemental Security Income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

       **I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

       **A.  Eligibility**

       The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505,

416.905.  The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

**B.  Procedural History**

On November 9, 2010, Plaintiff filed applications for disability insurance benefits and Supplemental Security Income asserting an onset date of April 1, 2010.  (Tr. at 182-193).  Plaintiff's applications were denied initially on January 25, 2011, and on reconsideration on April 6, 2011. (Tr. at 83-87).  A hearing was held before Administrative Law Judge D. Kevin Dugan on September 5, 2012.  (Tr. at 38-65).  The ALJ issued an unfavorable decision on October 25, 2012.  (Tr. at 20-31).  On May 29, 2014, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-5).  Plaintiff filed a Complaint (Doc. 1) in the United States District Court on July 15, 2014.  This case is ripe for review.  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (See, Doc. 17).

**C.  Summary of the ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.  *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[1] (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

2

impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through September 30, 2014. (Tr. at 22). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2010, the alleged onset date. (Tr. at 22). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: depression, borderline intellectual functioning, and bereavement. (Tr. at 22). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. at 22). At step four, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform a full range of light work at all exertional levels but with the nonexertional limitations of performing simple, routine tasks. (Tr. at 24). The ALJ determined that Plaintiff is capable of performing his past relevant work as a janitor/maintenance person, and that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. at 31). The ALJ determined that Plaintiff has not been under a disability from April 1, 2010, through the date of the decision. (Tr. at 31).

**D. Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote,* 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II. Analysis**

Plaintiff raises the following two issues on appeal:

1) The ALJ erred in failing to find that Plaintiff's mental impairments considered in combination meet Listing 12.04 Affective Disorders.

2) The ALJ erred in failing to include in Plaintiff's RFC all of Plaintiff's non-exertional limitations found by Dr. Thomas Harrell, Dr. Wanda Bethea, and Dr. Scott Kaplan.

(Doc. 19 at 13, 16).

## A. Whether the ALJ erred in failing to include all of Plaintiff's non-exertional limitations found by Drs. Harrell, Bethea and Kaplan

Plaintiff asserts that the ALJ failed to include non-exertional limitations found by Drs. Harrell, Bethea, and Kaplan in Plaintiff's RFC. Plaintiff claims that the ALJ only limited Plaintiff to performing simple, routine tasks, but this limitation did not account for the findings of these doctors. Plaintiff also asserts that the ALJ erred in failing to discuss the opinions of Drs. Harrell, Farber, and Chavez.

The Commissioner responds that the record contains no medical opinions from Drs. Harrell, Farber, and Chavez showing the nature and severity of Plaintiff's impairments including his symptoms, diagnosis, and prognosis, or what Plaintiff can still do despite his impairments. Thus, the Commissioner argues that the ALJ did not err in failing to assign weight to these doctors' opinions. The Commissioner also argues that the ALJ did not err in affording little weight to the opinions of Dr. Bethea and Kaplan because these doctors were one-time examiners and not entitled to any special significance. Therefore, the Commissioner contends that the ALJ was not required to set forth good cause to accord them less than controlling weight.

### 1. Dr. Harrell

Plaintiff asserts that he visited the Community Psychological Services for 29 therapy sessions from March 15, 2011 through April 24, 2012. Plaintiff argues that the ALJ failed to address the opinions of his treating doctors at Community Psychological Services, including Thomas H. Harrell, Ph.D.'s opinion, and failed to include the limitations found by Dr. Harrell in

5

Plaintiff's RFC. The Commissioner responds that Dr. Harrell's notes do not constitute medical opinions, and they fail to contain any additional functional limitations stemming from Plaintiff's mental limitations.

Dr. Harrell provided one report even though this report indicated that Plaintiff was treated in 29 individual sessions. (Tr. at 413). The records from these 29 sessions were not included in the Transcript. Dr. Harrell stated:

> Mr. Lord presented for treatment due to experiencing feelings of sadness for the past year. Although Mr. Lord appeared motivated for treatment, he becomes easily confused and is frequently unable to articulate the specific feelings and/or difficulties he is experiencing. He presented with a long history of social isolation, as he is interpersonally shy, but does not appear to be distraught about his lack of friends. He has maintained a close friendship for the past 15 years, which he reports is a fulfilling friendship. Mr. Lord's intellectual functioning is in the Extremely Low range. Therefore, specific behavioral interventions were necessary to facilitate Mr. Lord's acquisition and maintenance of skills. Mr. Lord demonstrates avolition, and blunted, flat affect, as well as eccentric patterns of behavior.

(Tr. at 413). Dr. Harrell determined that Plaintiff began treatment due to complaints of sadness. (Tr. at 414). Dr. Harrell found that Plaintiff becomes easily confused and had difficultly articulating his feelings and his difficulties. (Tr. at 413). Dr. Harrell diagnosed Plaintiff as being shy in interpersonal relationships. (Tr. at 413). Dr. Harrell found that Plaintiff needed specific behavioral interventions to acquire and maintain skills.

Dr. Harrell reported that after treatment, Plaintiff had learned some communication skills, such as verbal and nonverbal cues, assertiveness, boundaries, healthy relationships, and the "cognitive triangle." (Tr. at 414). Dr. Harrell found Plaintiff's treatment goals had been met to the extent possible taking into consideration Plaintiff's intellectual functioning. (Tr. at 414). Dr. Harrell found Plaintiff to have improved and Dr. Harrell set forth short-term goals of learning to engage in pleasurable behaviors, applying for jobs, and increasing a social network. (Tr. at 413).

6

Dr. Harrell also set forth long-term goals of decreasing frequency of feelings of sadness, obtaining employment, and decreasing feelings of loneliness (which was completed). (Tr. at 413). Dr. Harrell diagnosed Plaintiff with Schizoaffective Disorder. (Tr. at 414).

Although not referred to by name, the ALJ does include references in his Decision to Exhibit No. 13F which contains Dr. Harrell's report. (Tr. at 28). The ALJ noted that Plaintiff sought treatment in March 2011. (Tr. at 28). The ALJ noted that Plaintiff had accomplished some of his goals, and partially accomplished other goals such as decreased frequency of feelings of sadness. (Tr. at 28).

Plaintiff asserts that limiting Plaintiff to simple, routine tasks does not encompass all of Plaintiff's limitations found by Dr. Harrell. Plaintiff claims that Dr. Harrell found Plaintiff was limited in his ability to comprehend, communicate, learn, and self-motivate, and had eccentric patterns of behavior. Plaintiff also asserts that he was diagnosed with Schizoaffective Disorder and then opines that people with this disorder "can exhibit psychotic symptoms as [well] as a mood disorder." (Doc. 19, at 17). The Commissioner argues that Dr. Harrell's records do not constitute a medical opinion.

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and, based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The RFC is the most a plaintiff is able to do despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In determining whether Plaintiff can return to his past relevant work, the ALJ must determine the

Plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004); 20 C.F.R. § 404.1520(e).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when: "(1) the treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

"Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless 'good cause' is shown." *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5); and *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). A doctor's opinion may be discredited when it

8

is contrary to or unsupported by the evidence of record, or the opinion is inconsistent with the doctor's own medical records. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)).

In this case, Dr. Harrell, as a treating physician, set forth the symptoms that Plaintiff was feeling -- i.e., sadness, was easily confused, and unable to articulate his feeling and experiences. Dr. Harrell noted that Plaintiff was interpersonally shy, but not distraught. Dr. Harrell found Plaintiff to have intellectual functioning in the Extremely Low range, thus Plaintiff needed specific behavioral interventions to help Plaintiff acquire and maintain skills. Dr. Harrell observed that Plaintiff demonstrated abolition; blunted, flat affect; and showed eccentric patterns of behavior.

Dr. Harrell found that Plaintiff had learned some communication skills, assertiveness, boundaries, and about healthy relationships. Dr. Harrell determined that Plaintiff's treatment goals were met to the extent possible for someone of Plaintiff's intellectual functioning. Dr. Harrell diagnosed Plaintiff with Schizoaffective Disorder. Although Dr. Harrell did not specifically state what Plaintiff is able to still do despite his impairments and restrictions, Dr. Harrell did state that Plaintiff was easily confused, unable to articulate his feelings and difficulties, was interpersonally shy, and was in the Extremely Low range of intellectual functioning. Further Dr. Harrell stated that Plaintiff needed specific behavioral interventions to allow Plaintiff to be able to acquire and maintain skills. Dr. Harrell also mentioned that Plaintiff demonstrated "eccentric patterns of behavior." (Tr. at 413).

The Commissioner argues that Dr. Harrell did not provide a medical opinion and therefore, the ALJ did not err in failing to determine the weight to give to Dr. Harrell's opinion. The Court finds that Dr. Harrell set forth symptoms, a prognosis, a diagnosis, and Plaintiff's

9

abilities despite his mental limitations and restrictions. The ALJ did not mention Dr. Harrell by name, and did not provide the weight to afford Dr. Harrell's opinion. If the ALJ found that as a treating doctor, Dr. Harrell failed to set forth a medical opinion, then the ALJ should have included that issue in his decision. In this case, however, the ALJ failed to mention Dr. Harrell. Without a determination of the weight to afford Dr. Harrell's opinion, it is impossible for the Court to determine if the ALJ's decision is rational and supported by substantial evidence. Therefore, the Court finds that the ALJ erred in failing to mention and set forth the weight of Dr. Harrell's opinion.

### 2. Dr. Farber and Dr. Chavez

Plaintiff argues that the ALJ failed consider all of the medical evidence including the opinions of treating doctors, Phillip Farber, Ph.D. and Felipa Chavez, Ph.D. Plaintiff contends that an RFC must be based on all of the relevant evidence, and the ALJ erred in failing to consider Drs. Farber and Chavez's reports. The Commissioner argues that Drs. Farber and Chavez's records do not constitute medical opinions, and, therefore, the ALJ did not err in failing to discuss these records.

On March 15, 2011 and March 22, 2011, Plaintiff saw Dr. Farber[2] for an Intake Interview. (Tr. at 394). Plaintiff was seeking treatment for depression. (Tr. at 394). Dr. Farber determined that Plaintiff's appearance was consistent with his stated age, but found Plaintiff's speech "appeared impoverished as he provided minimal responses to questions," but was within normal limits as to volume and prosody. (Tr. at 397). Dr. Farber noted Plaintiff's thought processes and thought content appeared to be normal and that Plaintiff appeared to be oriented to

---

[2] When Plaintiff was treated by Dr. Farber and Dr. Chavez, he was also seen by Jaquelyn Marcinak, M.S., Clinician.

person, place, time and situation. (Tr. at 397). Dr. Farber noted that Plaintiff's mood was discerned to be neutral with a flat affect that was at times, inappropriate. (Tr. at 397). At treatment, Plaintiff would provide minimal responses and would smile at inappropriate times. (Tr. at 397). Plaintiff's judgment was inferred to be adequate, but he appeared to lack insight into his current difficulties. (Tr. at 397). Dr. Farber diagnosed Plaintiff with Adjustment Disorder with Depressed Mood, rule out Schizophrenia, rule out Schizoaffective Disorder, Personality Disorder, not otherwise specified with Schizotypal Features. (Tr. at 397). Dr. Farber recommended that Plaintiff be administered the MMPI-2, that Plaintiff identify triggers that perpetuate his feelings of sadness, further define his current difficulties, and work on decreasing his interpersonal discomfort. (Tr. at 397-98).

On March 18, 2011, Plaintiff was administered the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"). (Tr. at 415). Plaintiff appeared cooperative, and his mood was neutral and demonstrated flat affect. (Tr. at 415). Plaintiff approached the testing in an inconsistent manner, and the current assessment was deemed invalid and unreliable for interpretation. (Tr. at 415). The difficulties with the testing may have been attributed to Plaintiff's reading abilities or problems with medications. (Tr. at 416). The recommendation was to have Plaintiff's reading abilities tested. (Tr. at 416).

On April 27, 2011, Dr. Farber devised a treatment plan. (Tr. at 392). Dr. Farber found Plaintiff to be motivated for treatment, but became easily confused and unable to articulate specific feelings or difficulties. (Tr. at 392). Plaintiff was shy, but able to maintain a close friendship for 15 years. (Tr. at 392). Plaintiff engaged in activities that perpetuated his sadness such as not applying for jobs or lying in bed when sad, which perpetuated his feeling of inadequacy and a lack of independence. (Tr. at 392). Plaintiff's short term goals were to engage

11

in pleasurable behavioral activities, apply for jobs, and increase his social network. (Tr. at 392). Plaintiff's long-term goals were to decrease the frequency of his feelings of sadness, obtain employment and encourage job strengths, and decrease feelings of loneliness. (Tr. at 391). Dr. Farber recommended stress management and brief psychotherapy of 6 sessions. (Tr. at 393). Dr. Farber diagnosed Plaintiff with Depressive Disorder, and rule out Schizotypal Personality Disorder. (Tr. at 393).

On July 26, 2011, Plaintiff saw Dr. Chavez. (Tr. at 399). Plaintiff presented for treatment with feelings of sadness, was motivated for treatment, but was easily confused. (Tr. at 400). Plaintiff was unable to articulate specific feelings and difficulties he was experiencing. (Tr. at 400). Plaintiff was shy, and expressed feelings of loneliness. (Tr. at 400). Plaintiff's short-term and long-term goals were the same as set forth by Dr. Farber. (Tr. at 399-400). Plaintiff was seen for 10 individual therapy sessions. (Tr. at 400). Plaintiff responded well to behavioral interventions to increase his social skills and improve his mood. (Tr. at 400). Plaintiff learned communication skills such as verbal and nonverbal cues, and learned how to challenge his faulty assumptions regarding the behavior of others. (Tr. at 400). Plaintiff was to continue treatment every two weeks. (Tr. at 400). Plaintiff was diagnosed with Depressive Disorder, not otherwise specified. (Tr. at 400).

The ALJ did not specifically mention Drs. Farber and Chavez. However, in his Decision, the ALJ did refer to Exhibit Nos. 10F and 13F which contain information from the reports of Drs. Farber and Chavez. The ALJ noted that Plaintiff had accomplished some of his goals, and partially accomplished other goals such as decreased frequency of feelings of sadness. (Tr. at 28).

The same law as set forth above for Dr. Harrell applies to Dr. Farber's and Dr. Chavez's reports. Consistent with Dr. Harrell's report, Drs. Farber and Dr. Chavez's reports contained symptoms, diagnoses, and prognoses as well as what Plaintiff could do despite his impairments and his mental restrictions. Dr. Farber listed Plaintiff's symptoms of depression, speech impoverished but within the normal limits as to volume and prosody, thought content appeared normal, oriented in 4 sphere, mood was neutral with flat affect, and at times inappropriate, provided minimal responses, judgment was adequate, but had a lack of insight into his difficulties. Dr. Faber found Plaintiff to be easily confused, and unable to articulate his feelings and was shy. Dr. Farber recommended additional treatment and diagnosed Plaintiff with Depressive Disorder, and rule out Schizotypal Personality Disorder. Dr. Chavez's report set forth the same short-term and long-term goals as Dr. Farber's reports. She also noted that Plaintiff had feelings of sadness, was easily confused, and was frequently unable to articulate specific feelings and difficulties. Dr. Chavez found Plaintiff has learned some communication skills, and recommended that Plaintiff continue his treatment every two weeks. Dr. Chavez diagnosed Plaintiff with Depressive Disorder. (Tr. at 400).

The Commissioner again argues that Drs. Farber and Chavez failed to provide medical opinions, and therefore, the ALJ was not required to set forth the weight as to their opinions. Drs. Farber and Chavez set forth symptoms, prognoses, diagnoses, and Plaintiff's abilities despite his mental limitations and restrictions. The ALJ failed to mention these treating doctors' reports, and failed to articulate the weight to be given to Drs. Farber's and Chavez's opinions. As stated above relating to Dr. Harrell, if the ALJ found that as treating doctors, Drs. Farber and Chavez failed to set forth a medical opinion, then the ALJ should have included that issue in his decision. Without a determination of the weight to afford Drs. Farber's and Chavez's opinions,

13

it is impossible for the Court to determine if the ALJ's decision is rational and supported by substantial evidence. Therefore, the Court finds that the ALJ erred in failing to set forth the weight of Drs. Farber's and Chavez's opinions.

### 3. Plaintiff's remaining arguments

Plaintiff's remaining arguments focus on a number of issues that cannot be resolved until it is clear to the Court that the ALJ properly considered all of the relevant medical evidence in the record. Because the Court has found that, upon remand, the ALJ must evaluate certain medical opinions, which contain impairment evidence, and that evidence may impact the Court's analysis of other elements of the ALJ's Decision, the Court finds that any ruling on Plaintiff's remaining arguments would be premature at this time.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is not supported by substantial evidence as to the opinions of Dr. Harrell, Dr. Farber, and Dr. Chavez, and upon remand the Commissioner should reevaluate all of the medical opinions, and reconsider whether Plaintiff meets a Listing.

**IT IS HEREBY ORDERED:**

1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the medical evidence and determine if Plaintiff meets a Listing.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE AND ORDERED** in Fort Myers, Florida on September 28, 2015.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties